**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JORDYN THULIN,**

        **Plaintiff,**

v.                                             **Case No: 6:24-cv-899-PGB-LHP**

**EMBRY-RIDDLE**
**AERONAUTICAL UNIVERSITY,**
**INC.,**
        **Defendant.**
_____/

**ORDER**

This cause comes before the Court on Defendant Embry-Riddle Aeronautical University, Inc.'s ("**Defendant**") combined Motion to Dismiss Counts IV–VIII of Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike (Doc. 41 (the "**Motion**")) and Plaintiff Jordyn Thulin's ("**Plaintiff**") response in opposition (Doc. 42 (the "**Response**")). Upon consideration, the Motion is due to be denied.

**I.   BACKGROUND**[1]

Through this action, Plaintiff brings a series of claims arising from a faculty member's alleged stalking and harassment of Plaintiff on Defendant's campus. (*See generally* Doc. 31 (the "**FAC**")). In August 2020, Plaintiff enrolled as a student

---

[1]   This account of the facts comes from Plaintiff's First Amended Complaint. (Doc. 31). The Court accepts plaintiffs' factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

1

at Defendant's Daytona Beach campus. (*Id.* ¶ 15). Defendant assigned Jacob Scanlon ("**Scanlon**") to provide one-on-one flight instruction to Plaintiff. (*Id.* ¶¶ 18–19). Scanlon began working for Defendant in December 2019 and is an alumnus of the university. (*Id.* ¶¶ 16–17).

Beginning around October 2020, Scanlon began asking Plaintiff on romantic dates and making repeated sexual advances, which Plaintiff declined. (*Id.* ¶¶ 20–21). On November 11, 2020, Plaintiff texted Scanlon and stated that she had a boyfriend and would like to keep her relationship with Scanlon professional. (*Id.* ¶ 22). On one occasion, Scanlon, during a one-on-one required flight lesson in an aircraft, continued making romantic advances to Plaintiff, and "grabbed her arm in a sensual manner" while making such advances. (*Id.* ¶ 24).

Throughout the semester, Scanlon continued to make advances and ask for dates with Plaintiff, at one point texting her "I have asked about 50 different times." (*Id.* ¶ 29). In December 2020, Plaintiff alerted Defendant to Scanlon's behavior and requested a change in flight instructors. (*Id.* ¶ 30). Despite the instructor change, throughout the 2021 spring semester, Scanlon continued to call and text Plaintiff, ask her on dates, and arrive at her classes to walk with her. (*Id.* ¶¶ 31, 33–34). Plaintiff continued to ignore Scanlon's conduct. (*Id.* ¶ 32). On February 17, 2021, Plaintiff sent Scanlon a text stating that she wished for no contact, that she was not comfortable around him, and that he was harassing her. (*Id.* ¶ 34). Later, Plaintiff texted Scanlon, "Here's me being EXTREMELY clear to

leave me alone from now on out. Leave me alone [and] take NO for an answer." (*Id.* ¶ 36).

On March 2, 2021, Plaintiff emailed Alan Stolzer ("**Dean Stolzer**"), Defendant's Dean of Graduate Studies, to switch classes because Plaintiff no longer felt "comfortable going to her own classes[.]" (*Id.* ¶ 37). On March 16, 2021, Plaintiff filed a Title IX complaint on Defendant's website and sent an email to Dean Soltzer and several of Defendant's administrators informing them of Stanlon's conduct. (*See id.* ¶ 39). According to Section IV of Defendant's Title IX Sexual Harassment Policy, upon the receipt of a Title IX complaint and email, Defendant is required to initiate an investigation. (*Id.* ¶¶ 40–41, 43). Plaintiff alleges that Defendant did not initiate any such investigation. (*Id.* ¶¶ 40, 44).

In the two weeks following Plaintiff's filing of the Title IX complaint, Scanlon continued to harass Plaintiff. (*Id.* ¶ 48). On March 30, 2021, Scanlon followed Plaintiff into one of her classes and waited for over an hour until the class ended. (*Id.* ¶ 50). Upon exiting her class, Plaintiff saw Scanlon, and as a result, she ran to her car while Scanlon chased her. (*Id.* ¶ 51). When Plaintiff got to her car, she drove to her home in Bradenton, Florida and never returned to Defendant's campus. (*Id.*).

On April 6, 2021, Linda Dammer, Defendant's Title IX Coordinator, informed Plaintiff it was safe to return to campus, as Scanlon had resigned. (*Id.* ¶ 53). Plaintiff remained afraid and did not return to school. (*Id.* ¶ 63). According to the FAC, no investigation under Defendant's Title IX Sexual Harassment Policy

was ever performed. (*Id.* ¶ 53). On May 8, 2021, Defendant sent Plaintiff a notice that her GPA had fallen, placed her on academic warning, and provided notice of the student loans Plaintiff owed to Defendant, which totaled $71,050.00. (*Id.* ¶¶ 61–62).

As a result, Plaintiff filed the instant action. In the FAC, Plaintiff brings eight counts against Defendant, including for: violation of Title IX (Counts I and II), breach of contract (Count III), negligent hiring (Count IV), negligent retention (Count V), negligent supervision (Count VI), negligent failure to provide a safe environment (Count VII), and negligent infliction of emotional distress (Count VIII). (*Id.* ¶¶ 75–142). Defendant now moves to dismiss Counts IV through VIII of Plaintiff's FAC and moves to strike the allegations included in paragraphs 11 through 14.[2] (Doc. 41, pp. 1, 4).

## II.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

---

[2]  Paragraphs 11 through 14 of the FAC contextualize and discuss previous alleged incidents of sexual harassment on Defendant's campus. (*See* Doc. 1, ¶¶ 11–14). Paragraph 11 cites Defendant's 2020 Clery Act reports while paragraph 12 elaborates on such data by comparing report-to-student ratios to a different Florida university. (*Id.* ¶¶ 11–12). Paragraph 13 discusses a 2018 theatrical production put on by a group of Defendant's students who, during the production, described an alleged culture of sexual harassment and poor treatment of women at Defendant's campus. (*Id.* ¶ 13). Paragraph 14 discusses a 2021 lawsuit filed by a different plaintiff against Defendant alleging sexual assault. (*Id.* ¶ 14).

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

### III.  DISCUSSION

Defendant moves to dismiss Counts IV through VIII of Plaintiff's FAC for failure to state a claim upon which relief can be granted. (*See* Doc. 41, p. 1).

5

Defendant asserts that Plaintiff's five negligence-based causes of action fail under Florida's "impact rule" because Plaintiff did not allege to have suffered any physical injuries or physical impact from Scanlon's conduct. (*See id*. at p. 9).

Florida's impact rule applies when a plaintiff claims damages for mental pain and anguish "*but has not sustained any physical impact or contact.*" *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007). "When an impact or touching has occurred, *the rule has no application.*" *Id*. Thus, in Florida, there are two paths to recovery of damages for mental pain and anguish: "(1) one experiences a physical impact during the incident and suffers emotional distress stemming from that incident; or (2) one does not experience a physical impact but is involved in the incident and experiences emotional distress so severe that it manifests as physical injury." *Seybold v. Clapis*, 966 F. Supp. 2d 1312, 1315 (M.D. Fla. 2013) (citing *Eagle-Picher Indus., Inc. v. Cox*, 481 So. 2d 517, 526 (Fla. 3d DCA 1985)). The latter situation implicates the impact rule, while the former avoids it entirely. *Willis*, 967 So. 2d at 850.

"If the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself." *Id*. (quoting *Eagle-Picher Indus., Inc.*, 481 So. 2d at 526). For a plaintiff to endure a sufficient impact to avoid the application of the impact rule, the plaintiff "may meet rather slight requirements." *Id*. (quoting *Zell v. Meek*, 665 So. 2d 1048, 1050 (Fla. 1995)). In *Willis*, the Florida Supreme Court adopted the impact standard set by the Florida Third District Court of

6

Appeal: "The essence of impact, then, it seems, is that the outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body." *Id.* (quoting *Eagle-Picher Indus., Inc.*, 481 So. 2d at 527). *Willis* concerned a plaintiff who had a gun placed to her forehead and was physically patted down, which the Florida Supreme Court found satisfied the requisite impact standard so as to avoid the application of the impact rule. *See id.* at 849, 851.

Accordingly, viewing Plaintiff's allegations as true, as the Court must do, Plaintiff has sufficiently alleged that she sustained an impact that meets the above standard. *See id.*; (Doc. 31, ¶¶ 24–26). Specifically, Plaintiff has alleged that Scanlon grabbed her arm while making a romantic advance during a flight lesson. (*See* Doc. 31, ¶¶ 24–26, 137). The impact, compounded with Scanlon's alleged continuous harassment, led Plaintiff to suffer mental anguish, inconvenience, and humiliation, among other forms of distress. (*See id.* ¶¶ 136, 141). Considering that Plaintiff alleges that she sustained such an impact, Plaintiff's allegations avoid the application of the impact rule. *See Willis*, 967 So. 2d at 850.

Defendant's argument for dismissal relies on an earlier articulation of the impact rule, which stated that emotional distress damages must "flow *from physical injuries* the plaintiff sustained in an impact." (Doc. 41, p. 10 (emphasis added) (quoting *Fla. Dep't of Corrs. v. Abril*, 969 So. 2d 201, 206 (Fla. 2007) (quoting *R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995))). Defendant primarily relies upon the *Abril* and *Goodstein* cases in support of this iteration of

7

the rule. *See Abril*, 969 So. 2d at 206; *Goodstein v. Gunther Motor Co.*, No. 95-6678, 1996 WL 903950, at *14 (S.D. Fla. Sept. 12, 1996).

Puzzlingly, despite appearing to describe the impact rule in disparate ways, both *Abril* and *Willis* were decided by the Florida Supreme Court on the same day. As one judge in this District has remarked, "the evolution of Florida Supreme Court case law on [the impact rule] is muddled at best." *Seybold*, 966 F. Supp. 2d at 1314. In any event, *Abril* is distinguishable. The *Abril* court held that releasing confidential HIV results constitutes an exception to the impact rule's earlier definition. *Abril*, 969 So. 2d at 208. Unlike *Abril*, where there was no physical contact, there was physical contact here—Scanlon grabbed Plaintiff's arm in the aircraft. (*See* Doc. 31, ¶ 24). Thus, the instant case is more similar to *Willis*, where the court found that an impact occurred when a gun barrel was brought to the plaintiff's head and she was patted down, despite not being physically injured from the incident. *See Willis*, 967 So. 2d at 849, 850–851. Thus, the *Willis* court's articulation of the impact rule controls in this case. *See id*. at 850.

In *Goodstein*, the Southern District of Florida granted summary judgment for the defendant, finding that plaintiff's emotional distress claim did not survive the impact rule because no physical injury flowed from the defendant rubbing the plaintiff's shoulders and grabbing her breast. *Goodstein*, 1996 WL 903950, at *14. Critically, however, the *Goodstein* decision predated the Florida Supreme Court's decision in *Willis*. *See id*. Further, "the court did not decide [that the impact rule applied] upon a motion to dismiss," and the case was instead decided at the

summary judgment stage, thus distinguishing *Goodstein* from the instant case. *Sharp v. Marathon H.M.A., Inc.*, No. 05-21819-CIV, 2005 WL 8155287, at *3 (S.D. Fla. Sept. 13, 2005). To conclude, under Florida's impact rule, Plaintiff alleges sufficient facts to support that she suffered an impact, and Defendant's request that the Court dismiss Counts IV through VIII is thus denied.

Finally, Defendant moves to strike paragraphs 11 through 14 of the FAC alleging that they contain immaterial, impertinent, and scandalous matters pursuant to Federal Rule of Civil Procedure 12(f). (Doc. 41, pp. 1, 14); FED. R. CIV. P. 12(f). Plaintiff responds that the allegations in those paragraphs are derived from public records compiled under the Clery Act. (Doc. 42, pp. 8–9). Plaintiff further contends the allegations are relevant to Plaintiff's claims, as they help to demonstrate that Defendant breached its duty to provide a reasonably safe environment and also help show gender bias under Title IX. (*See id.*).

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). However, "[s]triking a pleading is a drastic remedy that is generally disfavored by courts." *Askan v. Faro Techs., Inc.*, No. 6:23-cv-920-PGB-DCI, 2024 WL 3183272, at *2 (M.D. Fla. June 26, 2024) (citations omitted); *see also Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1347 (M.D. Fla. 2002). "As a result, motions to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Askan*, 2024 WL 3183272, at *2 (citing *Seibel v. Soc'y Lease, Inc.*, 969 F. Supp. 713, 715 (M.D. Fla.

9

1997)). Since the content in paragraphs 11-14 is relevant to Plaintiff's various negligence allegations that Defendant breached a duty to maintain a safe campus environment, the material relates to the controversy and the request to strike is hereby denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's combined Motion to Dismiss Counts IV–VIII of Plaintiff's First Amended Complaint and Motion to Strike (Doc. 41) are **DENIED**.[3]

**DONE AND ORDERED** in Orlando, Florida on July 15, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[3] The Court notes that somewhat buried in the body of Defendant's Motion was an unopposed request that the Court stay Defendant's response to Counts I through III of the FAC (the "**request**"). (*E.g.* Doc. 41, pp. 4, 16). Plaintiff agreed to Defendant's request "so that the parties are working off the same operative pleading in this lawsuit." (*Id.* at p. 16). Defendant's request was not included in the title of the Motion and was not mentioned in any heading or subheading. (*See* Doc. 41). To date, Defendants have not filed a response to Counts I through III, and their request to stay the timeframe for doing so has effectively been rendered moot. In any event, Defendant's Answer to Counts I through III shall be filed with the remainder of Defendant's Answer to the FAC.